**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| SHAMIA WASHINGTON | : | |
| 490 Plaza Boulevard, Apt # 113K | : | |
| Morrisville, PA 19067 | : | CIVIL ACTION |
| | : | |
| v. | : | CASE NO.: |
| | : | |
| YARDLEY OPERATOR LLC, d/b/a | : | |
| YARDLEY REHABILITATION & | : | |
| HEALTHCARE CENTER | : | **JURY TRIAL DEMANDED** |
| 1480 Oxford Valley Road | : | |
| Yardley, PA 19067 | : | |
| and | : | |
| MARQUIS HEALTH CONSULTING | : | |
| SERVICES LLC | : | |
| 1608 Route 88, Suite 301 | : | |
| Brick, NJ 08724 | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      This action has been initiated by Shamia Washington (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Yardley Operator, LLC, d/b/a Yardley Rehabilitation & Healthcare Center and Marquis Health Consulting Services, LLC (collectively, "Defendants"). Plaintiff asserts violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981) and applicable state laws. Plaintiff contends she was subject to discriminatory and retaliatory mistreatment while employed (as explained *infra*) and that she was unlawfully terminated from her employment.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. State claims asserted herein are proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District, and Defendants are deemed to reside where they are subject to personal jurisdiction (rendering venue appropriate for multiple reasons).

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult female residing at the above-captioned address.

7.      Yardley Operator LLC, d/b/a Yardley Rehabilitation and Healthcare Center ("Defendant YRHC" where referred to individually) operates as a skilled-nursing facility in Bucks County, Pennsylvania (and this entity is a Pennsylvania domestic limited liability company).

8. Marquis Health Consulting Services LLC ("Defendant MHCS" where referred to individually) operates as a network, owner, manager, and provider of locations operating as skilled-care facilities in the Eastern United States.[1]

9. Within Defendant YRHC's corporate filings with the Pennsylvania Department of State, Defendant MHCS is identified as the "governor" of Defendant YRHC, and Defendant YRHC's "principal address" is listed at Defendant MHCS's headquarters. Moreover, and upon information, research and belief, Defendant MHCS: (a) directly manages operations within Defendant YRHC; (b) directly sets policies within Defendant YRHC; (c) oversees processes, hiring of leadership, and overall business decisions of Defendant YRHC; (d) advertises for jobs at Defendant YRHC on its own website; (e) advertises for its offerings at Defendant YRHC on its own website; and (f) engages in other uniform management of benefits, controls, and human resources of its facilities (including of Defendant YRHC).

10. The primary manager Plaintiff contends retaliated against her in this lawsuit and wrongfully terminated her (Kelly Grimaldi – Administrator) self-identifies publicly as a Defendant MHCS employee. *See* below an exert from Grimaldi's LinkedIn Profile:



**Administrator**
Marquis Health Consulting Services · Full-time
Nov 2021 - Present · 4 yrs 7 mos
Yardley, Pennsylvania, United States

Yardley Nursing and Rehab November to present

Oxford Nursing and Rehab (previously known as Attleboro) through November 2024

---

[1] Plaintiff for notice purposes identifies herein she may move to amend the inclusion of other entities as defendants because Defendant MHCS appears to operate under multiple iterations of its name within LLCs, such as Marquis Health Consulting LLC, Marquis Health Consulting Services LLC, Marquis Health Services LLC, Marquis Health Services LLC, and Marquis Healthcare, Inc. If such affiliations are properly Plaintiff's single, joint and/or integrated employers following initial discovery, Plaintiff make seek to amend the caption of this lawsuit.

11.     Due to overlapping resources, management, advertisement, controls, benefits, directives, and other nationwide (joint and integrated) structures, Defendants are properly single, joint and/or integrated employers for all purposes in this lawsuit.

12.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

13.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14.     Plaintiff is a black (African American) female.

15.     Plaintiff was hired by Defendants on or about March 25, 2023; and in total, Plaintiff worked for Defendants for almost exactly three (3) years (until termination in late March of 2026, as explained *infra*).

16.     Defendants operate publicly as "Yardley Rehabilitation & Healthcare Center" in Yardley, Pennsylvania (at the above-captioned address). This entity is a 170-bed for-profit skilled nursing facility.

17.     During Plaintiff's period of employment, Plaintiff was supervised by *inter alia*: (1) Michelle Angus ("Angus" – Director of Nursing); and (2) Kelly Grimaldi ("Grimaldi" – Administrator).

18.     Plaintiff worked for Defendants as a full-time Licensed Practical Nurse ("LPN") until being terminated on or about March 23, 2026.

19.     Plaintiff took maternity leave under the Family and Medical Leave Act ("FMLA") from in or about December of 2024 until returning to work in or about March of 2025.

20. Upon returning to work from Plaintiff's aforesaid FMLA leave in March 2025, Grimaldi had become Defendants' Administrator at Plaintiff's location.

21. Grimaldi has been employed by Defendant MHCS for approximately 4.5 years, but she was transferred from Defendants' facility in Langhorne, Pennsylvania (at Oxford Valley Rehabilitation & Healthcare Center) to Defendants' facility in Yardley, Pennsylvania (Yardley Rehabilitation & Healthcare Center).

22. Defendant YRHC was struggling with significant problems including but not limited to the following: (a) understaffing and high turnover of staffing; (b) lack of adequate training; and (c) many problems with patient care including not being able to answer call bells timely, medication errors, patients falling, and many other concerns that contributed to overall negligence of and toward those entrusted to Defendants for care. This had been a pervasive problem in 2025 and 2026.

23. Under Grimaldi, Plaintiff was employed for approximately (1) year. By late fall and/or winter of 2025, Grimaldi was attempting to create a chilling effect about and concerning anyone reporting negligence, including but not limited to patient falls. Grimaldi and Angus (presumably at the direction of Grimaldi) were intimidating, threatening, disciplining, and terminating certain employees who attempted to report for example falls (or other forms of negligence).

24. Grimaldi, Angus, and other management had begun vehemently and emphatically asserting and verbalizing that our "fall rates need to be reduced immediately," our "fall rates need to be reduced to zero," our "fall rates are out of control," and other iterations of these comments. The undeniable reality is Grimaldi was attempting to limit or curtail reporting, cause underreporting, and intimidate or discourage actual fall (or other negligence) reporting.

25.    By way of example(s) only, regulations in Pennsylvania require reporting (typically within 24 hours) such as under the Older Adults Protective Services Act ("OAPSA") and related regulations. Minor or major falls are generally required to be reported to agencies such as the Department of Health, the Area Agency on Aging, and other agencies (*particularly if such falls result from neglect of staff members*). And of course, employees of medical (and skilled-nursing) facilities are mandated reporters.

26.    In addition to intimidating employees in meetings or one-on-one discussions (such as with Plaintiff), Defendants had simultaneously turned fall reductions into competitions announced in messaging (attempting to also use a carrot to potentially encourage underreporting, instead of just a stick as aforesaid).

> Alert: Good afternoon Yardley staff~ THE WINNER OF THE FALL COMPETITION IS NORTH UNIT!!! October we had 25 falls but November we had 29 falls. Rehab had 14 falls, South had 10 and North had 3. The shift with a tie for most falls in 7a-3p and 11p-7a. So this is concerning. Lets make sure our residents are toileting before bed and brought to activities. Next week we have lunch supplied for North unit. So far in December we've had 2 falls, projecting to have 18 falls. The unit with the least amount of falls in December will have the next party for each shift. Remember keep your resident busy with coloring books, tv, call bells in reach, take them to activities, etc Nice work! -Kelly

27.     Basically, Defendants were attempting to downplay <u>any escalations</u> in medical care needs to avoid any review of their improper and inadequate medical care during the second half of 2025 into 2026. By way of some examples only, as applicable directly to Plaintiff:

(1) In the October-November 2025 timeframe, Plaintiff attempted to arrange for emergency services for a patient who had become severely lethargic and could not meaningfully stay away. Plaintiff was threatened by Angus with discipline for arranging emergency services (despite Plaintiff attempting to follow protocols).

(2) By on or about November 13, 2025, Plaintiff had learned that a resident (<u>different than referenced above</u>) died due to a significant change of health condition(s) *after a request to send the same resident to the hospital was denied.*

(3) On or about December 14, 2025, Plaintiff witnessed skin tear(s) on a resident and attempted to make a full report because of their "unknown origin." Plaintiff was admonished by Angus and told by Angus Plaintiff's documentation was removed from the medical record of that patient, as Angus did not want such reporting.

28.      Defendants had attempted to create a culture through threats and rewards (as to its staff) wherein patients were literally being picked up off floors (after falls) without required or mandated reporting or documentation. Plaintiff was conversing with coworkers who were expressing concerns about reporting or documenting workplace injuries, falls, or negligence to Angus or Grimaldi. Such management had in fact created a chilling effect upon employees, instead of encouraging all documentation or charting of any matters pertaining to such residents.

29.     On or about November 24, 2025, Plaintiff was in a resident's room who was assigned to be under Plaintiff's care. Another nurse (Amanda) had assisted the resident off the floor prior to Plaintiff observing the resident, as the resident in question had fallen or been dropped (while trying to be placed in a wheelchair). Plaintiff had been preparing fall reports <u>regardless of</u> the new company culture (and admonitions to the contrary by her management), and Plaintiff did so again with this resident.

30.    Angus approached Plaintiff on or about November 29, 2025, in an overtly hostile manner speaking abusively to Plaintiff and told Plaintiff: "You need to think about your children and your nursing license." She told Plaintiff she should not have filled out and submitted a fall report for the fall on November 24, 2025, and complained that Plaintiff's reports are driving up the fall numbers. She was then told by Angus that Grimaldi was so upset with Plaintiff preparing the fall report from November 24th that Grimaldi almost decided to suspend Plaintiff for creating such a report.[2]

31.    Plaintiff's personality and human composition is such that she: (a) will always to the right thing; (b) she would rather face losing her job than not protect or document patient concerns / injuries (as proper and expected by law); and (c) she will advocate orally for herself or others in a non-hesitating way, but who will always be a consummate professional in relaying such legitimate concerns.

32.    Between November and early December of 2025, Plaintiff started complaining to her management, including directly to Angus. She complained that she was worried about Defendants concealing negligence or abuse and falls in violation of laws. Plaintiff point-blank mentioned concerns that such concealment was "illegal" and that it "violates laws," and Plaintiff explained she would not partake in such concealment. But Plaintiff also complained that she was very upset because she felt like "blacks" and "African Americans" were being held to a different standard, being unfairly disciplined, and excuses were being made to get rid of them.

---

[2] Even if not legally required, it is an expected medical practice to document patient injuries or falls internally. It is frankly outrageous that a business caring for elderly and infirmed would try to avoid documenting any type of fall (causing a potential lack of understanding in treatment needs thereafter).

33.     Non-black nurses or staff were making many errors, such as medication errors, not answering patients, failing to handle matters with patients (or leaving them in their own bodily fluids or dirty), and engaging in other forms of negligence. Yet, they were not receiving discipline(s) or termination(s). Black employees on the other hand were being disciplined more harshly and terminated. Plaintiff made these concerns very clear, such that she would not be part of abuse or negligence concealment and that there were serious racial disparities.

34.     Plaintiff estimates between November 2025 to March of 2026 (when terminated) having complained of racial disparities to her management in no less than 6 or 7 separate conversations (and at times when being given warnings or discipline as elaborated upon more *infra*). Plaintiff complained about her unwillingness to conceal abuse or neglect more frequently.

35.     *Despite having a stellar record* within Defendants for almost three (3) years prior to December of 2025, Plaintiff started being barraged with warnings and discipline beginning in or about mid-December of 2025. Plaintiff was then given pretextual discipline *on an ongoing basis verbally and in writing* until being suspended on or about March 18, 2026, and terminated on or about March 24, 2026, by Grimaldi who claimed Plaintiff's termination was necessitated by poor performance.

36.     Plaintiff went from being a model employee in all possible ways to becoming a supposed (and claimed) terrible performer in her last several months following the aforesaid statutorily protected activities.

37.     Plaintiff believes and therefore avers that determinative factors in her termination were her race, complaints of racial discrimination, opposition to illegalities, her refusal(s) to engage in abuse or negligence concealment, and/or for attempting to be legally compliant with reporting requirements.

38.     Upon information and belief, Grimaldi has a history of accusations of racial discrimination in a prior employment context and for feigning rationales of termination(s). In the matter of *Rita Ellis v. Genesis Healthcare Corp*, et. al: Docket No.: 18-CV-05536 (E.D. Pa. 2018), a 6-year black (African-American) Assistant Administrator asserted: (a) she had no prior discipline; (b) she had been assigned to work under Grimaldi: (c) Grimaldi treated black employees different than white employees with respect to discipline and termination reasons; and (d) Grimaldi was using false assertions to terminate African American employees, including herself.

**Count I**
**Violations of 42 U.S.C. § 1981**
**(Racial Discrimination & Retaliation)**
**- Against Both Defendants -**

39.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.     Plaintiff seeks relief for the following adverse actions:

(1) For being subjected to a hostile work environment;

(2) For being subjected to numerous forms of discipline which would dissuade a reasonable person from continuing complaints;

(3) For being suspended; and

(4) For being terminated from her employment.

41.     The adverse actions taken against Plaintiff as outlined herein because of her race and/or in retaliation for her concerns of racism (that she expressed numerous times) constitute violations of 42 U.S.C. § 1981.

**Count II**
**Violation of the Medical Care Availability and Reduction of Error ("MCARE") Act**
**(Whistleblower Retaliation)**

42.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43.     The MCARE Act defines a medical facility very broadly incorporating the definition of same from 18 Pa. C.S. § 3203. *See* Section 301 of MCARE Act. As defined, Defendants operate a "medical facility."

44.     Plaintiff promptly objected to and reported an "incident," as defined in Section 301 of the MCARE Act. In fact, Plaintiff reported multiple incidents on an ongoing basis. The "incidents" at issue were prolonged medical neglect, medication errors concerning several residents, falls in the workplace, and other serious problems (relating to neglect or abuse).

45.     The MCARE Act prohibits any retaliatory termination of an employee for reporting a serious event or incident (of which Plaintiff reported numerous times), and the MCARE Act incorporates all remedies available under the Pennsylvania State Whistleblower Law.

46.     Plaintiff's retaliatory termination thus constitutes a violation of the MCARE Act, as she is a whistleblower entitled to protections under all applicable state laws (as incorporated therein).

**Count III**
**Violations of the Adult Protective Services Act ("APSA")**
**(35 P.S. §§ 10210.101 *et seq.*)**
**(Retaliatory Action / Intimidation)**

47.     Plaintiff was an employee of Defendants, operating a "facility" under the Adult Protective Services Act 35 P.S. § 10210.103, as this term has been defined.

11

48.     35 P.S. § 10210.302(a) states that "[a]ny person having reasonable cause to believe that an adult is in need of protective services may report such information to the agency which is the local provider of protective services. . ." .

49.     Plaintiff reported multiple instances of abuse / neglect to Defendants' management.

50.     Plaintiff was terminated after numerous concerns having been expressed in close temporal proximity to her termination from employment.

51.     35 P.S. §§ 10225.302(e) further states that "[a]ny person . . . with knowledge sufficient to justify making a report or cooperating with the agency . . . *shall be free from any intimidation* by an employer or by any other person or entity. Any person who violates this subsection is subject to civil lawsuit by the person intimidated . . . *wherein the person intimidated* . . . shall recover treble compensatory and punitive damages . . . ."

52.     Defendants violated 35 P.S. §§ 10210.302(e) because they intentionally retaliated against Plaintiff by terminating her as a way to intimidate her because she had knowledge that Defendants' employees (as a neglectful institution) committed acts of abuse against consumers of Defendants (which would have been sufficient to justify her making a report to an appropriate outside agency).

53.     Plaintiff was terminated as a form of intimidation before she was able to escalate such complaints to state agencies.

54.     As a consequence of Defendants' violations of the Adult Protective Services Act, Plaintiff has suffered damages.

12

## Count IV
## Violations of the Older Adults Protective Services Act ("OAPSA")
## (35 P.S. §§ 10225.101 *et seq.*)
## (Retaliatory Action / Intimidation)

55.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56.     Plaintiff was an employee of Defendants, operating a "facility" or facilities under the Older Adult Protective Services Act 35 P.S. § 10225.103, as this term has been defined.

57.     35 P.S. § 10225.302 states that "[a]ny person having reasonable cause to believe that an older adult is in need of protective services may report such information to the agency which is the local provider of protective services. . ." .

58.     Plaintiff was terminated shortly after complaints of abuse and neglect, as outlined in this lawsuit. And the residents she complained about were of the age or older as covered by this Act.

59.     35 P.S. § 10225.302(c) clearly states that "[a]ny person making a report or cooperating with the agency . . .  shall be free from any discriminatory, retaliatory or disciplinary action by an employer or by any other person or entity . . . [and] [a]ny person who violates this subsection is subject to a civil lawsuit by the reporter wherein the reporter . . . shall recover treble compensatory damages, compensatory and punitive damages . . . ."

60.     35 P.S. §§ 10225.302(c.1) (a subsection of 35 P.S. § 10225.302(c)) further states that "[a]ny person . . . with knowledge sufficient to justify making a report or cooperating with the agency . . . **shall be free from any intimidation** by an employer or by any other person or entity. Any person who violates this subsection is subject to civil lawsuit **by the person intimidated** . . . wherein the person intimidated . . . shall recover treble compensatory and punitive damages . . . ."

61.    Defendants violated 35 P.S. §§ 10225.302(c.1) because they intentionally retaliated and intimidated Plaintiff through discharge (of her employment).

62.    As a consequence of Defendants' violations of the Adult Protective Services Act, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B.    Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.    Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

14

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: May 13, 2026

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Shamia Washington | : | CIVIL ACTION |
| v. | : | |
| Yardley Operator LLC, d/b/a Yardley Rehabilitation & Healthcare Center, et al. | : NO. | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (x )

| | | |
|---|---|---|
| 5/13/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1.  Does this case involve property included in an earlier numbered suit?                                    Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same   Yes ☐
    individual?

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?          Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated
action in this court.

---

**Civil Litigation Categories**

**A.  *Federal Question Cases:***

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☐ 8.  Employment
☐ 9.  Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.  *Diversity Jurisdiction Cases:***

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)*:_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases: *(Please specify)*_____
       _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications
beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or
federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory
judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the
money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a
violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

WASHINGTON, SHAMIA

**DEFENDANTS**

YARDLEY OPERATOR LLC, D/B/A YARDLEY REHABILITATION & HEALTHCARE CENTER, ET AL.

**(b)** County of Residence of First Listed Plaintiff    Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability   ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander   Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability   Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine   ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability   Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle   **PERSONAL PROPERTY** ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability   ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury   ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice   ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment   ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations   ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other   **Other:** ☐ 540 Mandamus & Other | **IMMIGRATION** ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education   ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 1981 (42USC1981)

Brief description of cause:
Violations of the Section 1981 and applicable state laws.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.    **DEMAND $**    CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE 5/13/2026    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____